## Casteel v. Hockaday, et al.

(Decided February 1, 1911.)

### Appeal from Madison Circuit Court.

Real Property—Action to Recover—Title of the Plaintiff.—In an action to recover the possession of real property, if the title of the plaintiff is put in issue, he cannot succeed unless he exhibits such a title of record or by adverse possession as will show him to be the owner of the property and entitled to its possession. The fact that his adversary has no title will not help his case.

JOHN C. CHENAULT and C. C. WALLACE for appellant.

SMITH & SMITH for appellees.

OPINION OF THE COURT BY JUDGE CARROLL—Reversing.

The appellee Hockaday and Doty brought this action against the appellant, alleging that they were the owners of a lot in the Mallory Springs property that the appellant Casteel was wrongfully withholding from them. They described the property as lot No. 6 on a plat made by Parrish. They further averred that after their purchase of the lot, they erected on the same a dwelling house, which they occupied each year during the summer months, and that the appellant Casteel knew that they had erected a house on this lot and were claiming to be the owners of it at the time and before his purchase.

The appellant, defendant below, merely traversed the averments of the petition. He did not assert any title in the lot or claim to be the owner of any part of it.

After the case was prepared for trial, the lower court granted the appellees the relief sought.

It appears from the evidence that about 1880, eight persons bought the property known as the Mallory Springs property, containing in addition to the springs about 180 acres of land, with the intention of establishing a summer resort as well as for the purpose of using it for their own pleasure. A few years after obtaining the property these parties procured a surveyor to lay off a number of lots, about 50x200 feet, in the immediate vicinity of the springs, with the purpose of selling these lots to any person who might wish to buy them. Lot No. 6 so laid off was purchased by the appellees, and about 1894 they erected a cheap building on this lot, and occupied it every summer for several years. The appelless never received a deed or other writing evidencing their title to the lot, although the parties who owned the property at the time it was sold by them to Hurley the vendor of appellee concede that they were and are entitled to a deed to the lot. There is, however, with the record a plat of the premises made by the surveyor Parrish who laid off the lots, and it shows lot No. 6 and other lots fronting on "Main street," but this plat was never recorded. It further appears that the Mallory Springs property was sold prior to 1900 under an execution to satisfy a debt against the property. At this sale three of the original purchasers of the property bought it, and in 1902 they sold it to one William H. Hurley, but he died before a deed was made to him, and in 1905 the purchasers at the sale conveyed the property to the widow

and children of Hurley who conveyed to appellant. This deed recites that the grantors convey:

"The Mallory Springs farm, supposed to contain 180 acres, more or less, being all the land outside of the springs proper; also all of our interest in the springs proper, except N. B. Coy's lot bought from Howes, except David Simmons lot and the Burnam lot called the George White lot; David Simmons gets same size lot as laid off but in any shape he chooses around his house. The said parties to have the free access to and from the three houses and the springs. Also a right of way to and from the county road at the school house, to go and come when they please; and also excepting one other lot to N. B. Coy, the same size as the lot laid off to and known as the Price lot on the west side."

It will be observed that this deed reserves several lots, but lot No. 6 is not among them, nor is the name of either of the appellees mentioned. It also appears from the evidence that there was a deed made to the appellant, but that deed is not in the record. Nor is there any deed in the record to the immediate vendors of Hurley. Indeed, the record is singularly deficient in the exhibition of title papers, the only one being the deed to the Hurleys. Neither of the parties to this litigation show any record title, but it is clearly established by the evidence that the persons who sold to Hurley did not sell to him lot No. 6 claimed by the appellees, or any other lots that had been sold to other parties. It further appears that Hurley after his purchase recognized the ownership of lot No. 6 by appellees. Whether appellant knew at the time of his purchase from the Hurleys that the appellees claimed lot No. 6 is not shown, although there is enough in the record to leave the impression that when he purchased he did know that appellees had built a house upon this lot. And it is fully established that he knew they claimed this lot soon after his purchase. The difficulty with the case for the appellees is that they show no title to the lot either of record or by adverse possession. In cases like this, it has been repeatedly adjudged by this court that the plaintiff in order to recover must do so on the strength of his own title. The fact that the defendant may have no title to the property will not supply defects in the title of the plaintiff. Tested by this rule, the appellees failed to make out a case that would entitle them to recover this lot.

Wherefore, the judgment is reversed, with directions to dismiss the petition.