### Town of Whitesburg v. Baker, et al.

(Decided June 23, 1922.)

### Appeal from Letcher Circuit Court.

1. Municipal Corporations—Location of Building Site—Dedication of Street.—In a controversy as to whether a building site is located on the main street of a town as originally dedicated, the plat of the original town site with surveys made for the purpose of locating it are examined and held to show that the street as originally laid out does not include the building site in controversy.

2. Municipal Corporations—Location of Public Square and Streets. —It is within the power of processioners appointed under sections 2367, 2368 and 2369, Kentucky Statutes, to act for a city in locating the public square and streets of the city; but their acts in locating and marking boundaries are not binding on the property owners of the city whose rights are involved, unless such property owners consented to the proceeding as required by the statutes

3.  Municipal Corporations—Conveyance of Land to be Used for
    Streets.—A deed from various citizens of the town, whereby they
    attempt to convey to the trustees of the town, without naming
    them, certain land to be used as a street, examined and held not
    to include the land in controversy.

DAVID HAYS for appellant.

S. E. BAKER and W. H. MAY for appellees.

OPINION OF THE COURT BY JUDGE MOORMAN—Affirming.

This suit was filed by appellant, the city of Whitesburg, in the Letcher circuit court, for a mandatory injunction to compel appellees to remove a building constructed by them on what was claimed in the petition as a part of Main street in that city. A separate suit was filed by appellant against S. E. Baker, seeking similar relief as to a stone wall alleged to have been built on a part of the same street. The two cases were consolidated and heard together. The chancellor granted the relief as to the wall but dismissed the petition as to the building. The city is appealing from the adverse part of the judgment.

The rights of the parties with reference to the matters in issue depend on the location of Main street, it being contended by appellant that the building referred to is located on that street, whereas appellees contend that the ground on which it stands was never dedicated to the city as a street, and is not included within the boundaries of Main street.

The town of Whitesburg was laid out in 1842. There is filed with the record the original plat, describing by metes and bounds the town site and attempting to lay out and dedicate the public ways therein, including Main street. As described on that plat the dedicated site begins at a dogwood "near the spring house." Main street as attempted to be described on the plat has no stated point of beginning and has but three calls. There are, however, designated and marked lots on the plat to the number of thirty-nine. The entire site is north of the river. With the view of locating the boundaries of the town as originally laid out and of showing the location of Main street two surveys were made and put in evidence on the trial. They show a part of Cross street which intersects Main street at a right angle, and also what the draftsmen conceived to be the correct location

of Main street. The building erected by appellees is near the river and adjacent to a steel bridge spanning the river, constructed in 1912 to replace an old wooden bridge built in 1907. Prior to 1907 there was no bridge across the river and Main street led into a county road that paralleled the river on the north side.

Appellant contends that Main street as originally laid out extended from Cross street to the river bank and included the land on which the building stands, but if that be not true a dedication of the street as shown on the plat filed by it was made in 1896 under what is termed a processioners' report, filed with the record; and further that if neither of the foregoing contentions be sound, its claim is maintainable under a deed of May 12, 1896, whereby the owners of the property on either side of the street, from Cross street to the river, conveyed to the city the strip of land designated on the plat filed by the city as Main street.

In support of its first contention appellant relies on the old plat whereon it is shown that eleven lots were laid out north of Main street and east of Cross street. The plat of the survey that it recently had made also contains eleven designated lots in that section of the original site, but the one filed by appellees contains only nine defined lots in the same section. However, the old plat is obviously inaccurate and the evidence does not show that the eleven lots shown on the plat filed by appellant conform in size to the lots similarly designated on the original plat. The corresponding likeness in number, therefore, can offer no reliable criterion by which the extent of the boundary can be determined. The original survey, as we have stated, begins "near the spring house," and that point is designated on the two maps of survey made by the parties and introduced in evidence. There is practically no controversy as to the place where the spring house was located. Starting at or near that point and running the calls and distances given in the original survey would result in the closing of the survey some distance west of the point where the building in controversy is located, and would necessarily exclude the building from the street as then dedicated. It is also true that a survey thus made with the spring house shown on appellant's plat as a beginning point would likewise result in excluding the building from Main

street as originally laid out. This exclusion cannot be attributed to variations in the compass on account of the great lapse of time since the original survey was made. The location of the boundaries of the original site affords the surest and in fact the only practicable means of determining the then location of Main street, and it seems clear to us from an examination of the two recent surveys that the street as originally laid out did not extend to the property in controversy. To this conclusion may be added the corroborating fact that several old deeds were introduced in evidence by which conveyances of parts of the original site were made, and they indicate that lot nine was the extreme eastern lot in the town as first established, and that lots ten and eleven shown on appellant's map were in fact south of Main street instead of north of it as shown on that map. From a consideration of this evidence our conclusion is that as originally laid out the street did not include the land in dispute.

Nor do we think that an extension of Main street to the river was effected by the so-called processioners' proceeding of 1896. The evidence of that proceeding seems to be nothing more than a report of a survey made by the surveyor of Letcher county for the purpose of locating the streets and the public square of the town of Whitesburg. It is signed by the deputy county surveyor and is dated April 25, 1896, but it was not lodged for record in the office of the county clerk until July, 1915, many years after it was made and more than two years after the building complained of was erected. The law requires the county court of each county to appoint for a term of four years processioners for the county, who, on application of any person producing his title papers, may go on the applicant's land or such parts as he may desire and remark the same, or may go on the dividing lines of adjoining owners, when selected by them or with their consent, and mark new corner trees and set up new stones. But it provides in the latter case that the consent of the parties to the acts of the processioners shall be endorsed on the report, and signed by the parties and attested by one or more of the processioners. (Ky. Stats. 2367, 2368, 2369.) Granting that it was within the power of the processioners to act for the city in locating the public square and streets of the city, the locations and the marking of the boundary lines would not be binding on the property owners of the city whose rights were involved, unless

such property owners consented as is required by statute to the acts of the processioners. The consent of the property owners is not shown on this paper. So it does not amount to such a report as is contemplated by the statutes and does not serve to extend or enlarge the boundaries of Main street.

The city finally relies on the deed from various citizens of Whitesburg, whereby they attempted to convey "to the trustees of the town of Whitesburg," without naming them, the land designated as "Main Street" on the map filed by appellant. It is said that that deed effectuated an extension of the street beyond its limit, as fixed in the original dedication, to the river on the east side of town; that Baker's only claim is under a deed of April 7, 1902, from James E. Sarver, and that includes nothing south of Main street. The decision of this case does not depend on Baker's title, but on the legality of appellant's claim, since appellant must recover, if at all, on the strength of its own title, and not on the weakness of that of its adversary. Ison, etc. v. Halcomb, 136 Ky. 523; Tool v. Kinman, 140 Ky. 208; Casteel v. Hockaday, et al., 141 Ky. 835.

The beginning call in the deed on which this claim rests is a stone on the southeast corner of lot No. 1. The line runs from that point S. 64½ E. 36 poles *to a stake and stone near the river at the upper end of the town* (italics ours), and thence S. 26½ W. 2½ poles to a stone on the south side of the street, thence along the south side to a stone *at the river bank* at the lower or west end of town. It is contended that this deed extended Main street to the river. The extension, however, towards the east reaches *a stake and a stone near the river,* whereas the western end of the street extends to a stone *at the river bank.* The original corner, the stake and stone near the river, was not located in either of the surveys made; but the designated location "near the river," instead of a designation, "at the river bank," as at the west end, precludes the idea rather than proves that the extension reached the river bank. This view is fortified by the testimony of appellant's witness, Field, whose measurement of the first call in the deed fell short of the river bank and the house in controversy. Furthermore, the deed from James E. Sarver to James P. Lewis, of date March 15, 1900, which includes the land immediately adjacent to the river south of the east end of

Main street, describes a tract bounded on the north by Main street and the public road. If Main street at that time, and the deed under which appellant claims had then been executed, extended to the river, this tract of land would have been bounded on the north by Main street alone. The fact that it was described as bounded on the north, not only by Main street but also by the public road, lends itself to a location of the east end of the street at a point short of the property in dispute. These facts and circumstances seem to us logically to support the conclusion that the street was not extended under the deed of May 12, 1896, to the river bank or to include the ground in controversy. Certainly it cannot be said that a judgment to this effect is against the preponderance of the evidence.

Counsel for appellees insist that the judgment, ordering the removal of the stone wall, should be reversed. But that part of the judgment is not before this court, as no cross appeal has been taken by S. E. Baker, as provided in section 755 of the Civil Code. We have here only the judgment with reference to the building. As to that phase of the case it is our opinion that the views of the trial court were correct, and the judgment is, accordingly, affirmed.